# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:08cv291

| | |
|---|---|
| IRWIN INDUSTRIAL TOOL COMPANY, d/b/a BernzOmatic and NEWELL OPERATING COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> WORTHINGTON CYLINDERS WISCONSIN, LLC, WORTHINGTON CYLINDER CORPORATION, and WORTHINGTON INDUSTRIES, INC., <br><br> Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiffs' Motion for Protective Order [Doc. 51]; Defendants' Motion for Protective Order [Doc. 54]; Plaintiffs' Motion to Compel [Doc. 56]; Plaintiffs' Motion for Expedited Consideration of Plaintiffs' Motion to Compel [Doc. 58]; Defendants' Motion to File Documents Under Seal [Doc. 62]; and Plaintiffs' Motion to Strike Defendants' "Reply" or In the Alternative for Leave to File a Final Reply [Doc. 67].

## I. PROCEDURAL BACKGROUND

The Plaintiffs Irwin Industrial Tool Company, d/b/a BernzOmatic and Newell Operating Company (collectively "BernzOmatic") brought this action on June 25, 2008 against the Defendants Worthington Cylinders Wisconsin, LLC, Worthington Cylinder Corporation, and Worthington Industries, Inc. (collectively "Worthington"), asserting various claims arising from Worthington's purported breach of the parties' contract ("Supply Agreement"), as well as claims for false designation of origin and false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125(a); unfair and deceptive trade practices, in violation of N.C. Gen. Stat. §§ 75-1.1, et seq.; tortious interference with prospective business relations in violation of North Carolina law; and unlawful price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13. [Doc. 1]. On August 4, 2008, Worthington filed both an Answer and Counterclaim [Doc. 14], asserting claims for fraudulent inducement and breach of contract, and a Motion to Dismiss, seeking dismissal of BernzOmatic's non-contractual claims. [Doc. 10].

The Court entered a Pretrial Order and Case Management Plan on September 5, 2008, setting a discovery deadline of May 1, 2009 and a motions deadline of June 1, 2009. [Doc. 28]. Following the initial pretrial

conference, the parties began to engage in discovery. In light of Worthington's pending Motion to Dismiss, the parties agreed to initially limit their discovery efforts to BernzOmatic's contractual claims.

Upon commencing discovery, the parties determined that the entry of a protective order was necessary, but they were unable to agree upon its terms. BernzOmatic filed a Motion for Protective Order on December 10, 2008. [Doc. 51]. On December 29, 2008, Worthington filed its own Motion for Protective Order [Doc. 54], accompanied by a Memorandum of Law that both supported Worthington's Motion for Protective Order and opposed BernzOmatic's Motion. [Doc. 53]. BernzOmatic filed a Reply in support of its Motion for Protective Order and in Response to Worthington's Motion for Protective Order on January 12, 2009. [Doc. 59].

On January 26, 2009, Worthington filed a Reply to BernzOmatic's Opposition to Worthinton's Motion for Protective Order and further moved to file certain documents under seal in support thereof. [Docs. 62, 63]. BernzOmatic moved to strike this Reply brief, arguing that the brief was neither timely nor properly filed. Alternatively, BernzOmatic moved for leave to file a "Final Reply" to Worthington's pleading. [Doc. 67]. Worthington filed a Response opposing BernzOmatic's Motion on January 30, 2009. [Doc. 68].

3

BernzOmatic filed the present Motion to Compel on January 7, 2009, asking the Court to enter an Order directing Worthington to provide timely and complete responses to BernzOmatic's written discovery requests. [Doc. 56]. BernzOmatic moved for expedited consideration of this Motion. [Doc. 58].

Having been fully briefed, these motions are now ripe for disposition.

**II.     The Parties' Motions for the Entry of a Protective Order**

The parties agree that discovery in this matter will involve documents that contain proprietary and other confidential information, such as sales figures, business plans, profit margins, and other sensitive financial information, and therefore, the entry of a protective order is warranted in this case. After discussing the protective order and trading drafts and revisions, the parties have agreed on most of its terms, including the designation of two levels of confidential documents: "Confidential" and "Highly Confidential." The primary issue still dividing the parties is whether in-house counsel should be permitted to view documents designated as "Highly Confidential." BernzOmatic takes the position that its general counsel, John Stipancich[1],

---

[1] Stipancich is the Group Vice President and General Counsel, Cleaning, Organization and Décor and Tools & Hardware Groups and Assistant Secretary for Newell Rubbermaid, Inc. [Declaration of John K. Stipancich ("Stipancich Decl."), Doc. 52-7 at ¶2]. BernzOmatic is a wholly-owned subsidiary of Newell Rubbermaid, Inc. ("Newell"), and Stipancich serves as General Counsel for BernzOmatic, as well as a majority of the business units which Newell owns. [Id. at ¶3].

should be permitted to view "Highly Confidential" documents; Worthington's position is that only outside counsel should be permitted to view such documents. [Docs. 52, 53].

Parties in a civil action may seek discovery of all information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, the Court may minimize the burden on the producing party by entering a protective order which provides "that a trade secret or other confidential research, development, or commercial information not revealed or be revealed only in a specific way." Fed. R. Civ. P. 26(c)(1)(G).

In order to protect "Highly Confidential" information from in-house counsel's view, Worthington must "make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" that it would be harmed competitively by in-house counsel's access to the confidential information. MGP Ingredients, Inc. v. Mars, Inc., 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). If Worthington meets this burden, the burden then shifts to BernzOmatic to show a sufficient need

for the information that outweighs the risk of injury to Worthington.  See Intel Corp. v. VIA Techs., Inc., 198 F.R.D. 525, 528 (N.D. Cal. 2000).

"An unacceptable risk of disclosure that cannot be adequately mitigated by a protective order is a factor in limiting access to confidential information." Id. at 529.  In determining whether an unacceptable risk of disclosure exists, the Court must look at more than just an attorney's classification as in-house counsel.  "Whether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained."  U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  Rather, the relevant inquiry is whether counsel is involved in "competitive decision-making," which is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advise and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  Id. at 1468 n.3.

BernzOmatic denies that Stipancich is involved in any competitive decision-making.  In support of its position, BernzOmatic has submitted the Declaration of John K. Stipancich, in which he states that his duties as

general counsel include advising BernzOmatic on litigation matters, coordinating litigation strategies with outside counsel, and addressing legal issues that arise between BernzOmatic and its various business partners. [Stipancich Decl., Doc. 57-2 at ¶5]. Stipancich denies that he is involved in the business-making process of BernzOmatic or any other subsidiary of Newell and specifically denies participating in decisions regarding pricing, product design, marketing or production. [Id. at ¶6]. Stipancich further states that he needs access to all materials produced in this case in order to assist outside counsel effectively, as he is responsible for developing much of BernzOmatic's legal strategy in this matter. [Id. at ¶7].

Worthington argues that BernzOmatic is its "most direct and fierce competitor" in the hand held torch cylinder market, and that the unfettered disclosure of competitively sensitive business information to Stipancich would result in competitive harm to Worthington. [Doc. 53 at 7-8]. In support of its argument, Worthington has submitted the Declaration of Wayne L. Powers, the Director of Industrial Products for Worthington Cylinder Corporation. [Declaration of Wayne L. Powers ("Powers Decl."), Doc. 53-2 at ¶2]. As Director of Industrial Products, Powers has responsibility for Worthington's hand held torch cylinder business and is familiar with the state of competition

in the marketplace for those products. [Id. at ¶3]. His duties include communications with BernzOmatic employees regarding various business-related issues. [Id. at ¶4].

In the course of his dealings with BernzOmatic, Powers has participated in a number of negotiations in which Stipancich also has participated, and Powers has had the opportunity to witness Stipancich's interactions with other BernzOmatic executives. [Id. at ¶7]. Based upon these observations, Powers has reached the conclusion that Stipancich has greater involvement in and influence upon the non-legal business affairs of BernzOmatic than Powers would expect in-house counsel to have. [Id. at ¶8]. For example, Powers has observed that other BernzOmatic executives often solicit business advice from Stipancich and defer to him on business matters due to his tenure and experience with the company. [Id. at ¶9]. As another example, Powers states that in 2006, Stipancich assumed responsibility for negotiating an Amendment to the parties' Supply Agreement to allow Worthington to make direct sales to a third party, Rothenberger. Stipancich specifically negotiated on behalf of BernzOmatic which type of cylinder sales would be permitted and the amount of royalty to be paid to BernzOmatic. [Id. at ¶¶13-16].

In addition to the Powers Declaration, Worthington relies upon BernzOmatic's Initial Disclosures, in which Stipancich is named as a person with discoverable information regarding: "[n]egotiations, breach, and termination of Supply Agreement and deterioration of relationship between BernzOmatic and Worthington; Worthington's price increases, interference with BernzOmatic's customer relationships, and other conduct; BernzOmatic's search for alternative supply and mitigation of damages; UltraBlue transaction." [Doc. 53-2 at 48]. As further evidence of Stipancich's involvement in competitive decision-making, Worthington submits copies of e-mails to Powers BernzOmatic's president, which reveal that Stipancich had input regarding the particular terms of the Rothenberger royalty agreement. [Doc. 64, filed under seal]. Additionally, Worthington submits a copy of the Asset Purchase Agreement, whereby BernzOmatic purchased UltraBlue, which is signed by Stipancich is his capacity as assistant corporate secretary. [Doc. 65, filed under seal].

Upon reviewing the evidence submitted by the parties, the Court concludes that Worthington has satisfied its burden of demonstrating that Stipancich participates in the types of decision-making that would create an unacceptable risk of disclosure. While Stipancich affirms in his Declaration

that he is not involved in the business decision-making process of BernzOmatic, that statement is called into question by Powers, who observed BernzOmatic executives seeking business advice from Stipancich and deferring to him on purely business matters, particularly during the negotiation of the Rothenberger royalty agreement. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1471 (9th Cir. 1992) (in-house counsel denied access to confidential information where counsel advised management "on a host of contract, employment and competitive marketing decisions" and was thus in involved in competitive decision-making); Intel, 198 F.R.D. at 529-30 (in-house counsel denied access to confidential information where duties involved evaluating and negotiating company's licensing agreements and thus "necessarily affect[ed] licensing decisions"). Further, Stipancich's dual role as general counsel and assistant corporate secretary heightens the risk of inadvertent disclosure of confidential information. See Norbrook Labs., Ltd. v. G.C. Hanford Mfg. Co., No. 5:03CV165 (HGM/GLS), 2003 WL 1956214, at *5 (N.D.N.Y. Apr. 24, 2003) (in-house counsel denied access where counsel's positions as corporate secretary and member of board of directors "create a serious risk of the inadvertent disclosure of confidential documents and information," as counsel "sits in the

same room as those who are involved in competitive decision-making"). While the Court does not doubt that Stipancich would make his best efforts to comply with the protective order, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." FTC v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir. 1980).

Furthermore, the Court notes that BernzOmatic will not be unduly prejudiced by Stipancich's restricted access, as BernzOmatic has retained competent outside counsel, who have been involved in the litigation from the very beginning and are fully familiar with the factual and legal issues of the case. See Norbrook, 2003 WL 1956214, at *5; compare U.S. Steel Corp., 730 F.2d at 1468 (forcing party to rely solely on newly retained outside counsel would cause extreme hardship where litigation was "complex and at an advanced stage").

In an attempt to reach a compromise on this issue, Worthington included a provision in its proposed protective order which would allow either party to request that in-house counsel be granted access to certain confidential information based upon a showing of a "particularized need." [Doc. 53-2 at 14 ¶4.7]. If the parties are unable to agree on whether a

particularized need has been shown, the proposed protective order makes provisions for the parties to bring their discovery dispute before the Court for resolution. [Id.]. BernzOmatic rejects Worthington's proposed compromise [Doc. 59 at 10], as does the Court. The inclusion of such a provision would undoubtedly involve the Court in needless discovery disputes and result in a waste of judicial resources.

For the foregoing reasons, BernzOmatic's Motion for Protective Order [Doc. 51] is denied, and Worthington's Motion for Protective Order [Doc. 54] is granted, as modified herein.

## III. Plaintiffs' Motion to Compel

BernzOmatic moves the Court for the entry of an Order directing Worthington to complete the production of documents responsive to BernzOmatic's written discovery requests and to amend its responses so as to comply with the Federal Rules of Civil Procedure. [Doc. 56].

With respect to Worthington's production of documents, the parties' briefs indicate that this document production is now complete. [Doc. 66 at 1; Doc. 69 at 1]. As such, BernzOmatic's Motion to Compel with respect to the production of documents is denied as moot.

BernzOmatic argues that some of Worthington's "General Objections" to BernzOmatic's Requests for Admission are improper. Specifically, BernzOmatic takes issue with General Objection No. 7, wherein Worthington states that by responding to the Requests, "Worthington does not admit, adopt, or acquiesce in any factual or legal contention, assertion, or characterization contained in any Request." [Doc. 57-4 at 2]. The Court agrees that this type of objection is generally improper. If a party does not admit the subject of a request, Rule 36 requires the party to "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). Any denial of a request "must fairly respond to the substance of the matter." Id. Accordingly, Worthington's General Objection No. 7 to the Requests for Admission is improper and is hereby overruled and stricken.

BernzOmatic further argues that Worthington's General Objection No. 9 is improper. In that objection, Worthington states that it does not waive any objection to the use of the Response, including "all objections to the competency, relevancy, materiality, and admissibility of any information or Response that may be produced . . . ." [Doc. 57-4 at 2]. This "objection" is not necessarily improper. Objections regarding materiality, relevancy, and

admissibility are not waived by responding to a request for admission, and thus, Worthington is entitled to raise such objections, if necessary, at such time as BernzOmatic may seek to introduce such Responses at trial or otherwise. See Marshall v. Planz, 145 F.Supp.2d 1258, 1278 (M.D. Ala. 2001) ("Rule 36(b) is not a rule of admissibility.").

BernzOmatic further argues that Worthington's response to Request for Admission No. 1 does not fairly respond to the substance of the request. In response to BernzOmatic's objection, Worthington has agreed to amend this Response. [Doc. 66 at 14]. Accordingly, BernzOmatic's objection to Worthington's response to Request for Admission No. 1 is rendered moot.

BernzOmatic argues that Worthington's responses to BernzOmatic's Requests for Production of Documents are inappropriate because Worthington states in each response that it is producing "documents deemed responsive based on Worthington's understanding" of the requests at issue. [Doc. 57-2 at 5-32]. The Court does not find this qualification to be inappropriate and therefore will not require Worthington to amend its responses.

Finally, BernzOmatic argues that, despite the parties' previous agreement, discovery should now proceed with respect to the non-contractual

claims. The Court agrees that discovery should commence immediately on all counts remaining in this action.[2]

## IV. Other Motions

### A. Motion for Expedited Consideration

BernzOmatic moves for expedited consideration of its Motion to Compel. The Motion to Compel having been disposed of, BernzOmatic's Motion for Expedited Consideration of Plaintiffs' Motion to Compel [Doc. 58] is denied as moot.

### B. Motion to Strike

BernzOmatic moves to strike the Reply filed by Worthington in response to BernzOmatic's Response to Worthington's Motion for Protective Order on the grounds that the Reply is an improper sur-reply; that there were no new matters in BernzOmatic's Response which needed to be addressed; and that the Reply is both untimely and in excess of the page limit. Alternatively,

---

[2] The parties' agreement to limit the initial discovery in this case to BernzOmatic's contractual claims apparently was an informal one between the parties that was not approved by the Court. This case presents the classic example of why the Court does not permit such informal modification of its Case Management Plan. The parties, having become embroiled in a discovery dispute during the initial phase of discovery, are now faced with the daunting task of completing discovery on *all* claims by May 1, 2009, less than two months from now, so that this case may be ready for trial by September 2009. The parties are advised that the Court would not be inclined to grant a continuance of the trial date based on the parties' inability to complete discovery by the established deadline.

BernzOmatic seeks leave of Court to file a "Final Reply" to the pleading. [Doc. 67].

Contrary to BernzOmatic's argument, Worthington's Reply is not an improper sur-reply, as it was filed in response to BernzOmatic's Response to Worthington's Motion for Protective Order and addresses the arguments set forth therein. Furthermore, the Reply is not untimely, as it was filed within the time allotted for the filing of reply briefs. See LCvR 7.1(E) (seven days for the filing of reply briefs); Fed. R. Civ. P. 6(d) (three days added for service by electronic means). Finally, while Worthington's Reply does exceed the page limit set by this Court in its Amended Pretrial Order and Case Management Plan by two pages, [Doc. 33 at 7-8], the Court will, in its discretion, accept this pleading but will strike the last two pages thereof and disregard them in the consideration of this Motion. Counsel is admonished that in the future both parties will be expected to comply strictly with the page limitations and font requirements as set forth in the Amended Pretrial Order and Case Management Plan.

The issue of the proper form of a protective order has resulted in the filing of over 300 pages of briefs and supporting exhibits. Suffice it to say that this issue has been exhaustively briefed by the parties, and the Court is well

aware of the parties' respective positions on the issue.[3]  Accordingly, BernzOmatic's request for leave to file a sur-reply to Worthington's Reply is not well-taken and is therefore denied.

**C.    Motion to File Documents Under Seal**

Worthington moves to file under seal certain exhibits to its Reply in support of its Motion for Protective Order.  [Doc. 62].  For cause shown, Worthington's motion will be granted.

**O R D E R**

Accordingly, **IT IS, THEREFORE, ORDERED** that:

(1)    Plaintiffs' Motion for Protective Order [Doc. 51] is **DENIED**.

(2)    Defendants' Motion for Protective Order [Doc. 54] is **GRANTED** as modified herein.  A separate Protective Order shall be entered simultaneously herewith.

---

[3]Indeed, all of the motions currently pending before the Court have been briefed *ad nauseam*, despite the fact that the issues presented are relatively straightforward.  In the future, the Court will expect counsel on both sides to avoid involving the Court needlessly in discovery disputes.  The Court further expects that, in all future filings, counsel will present their arguments concisely, so as to minimize the expense to their clients and to avoid inundating the Court with voluminous briefing.  In this regard, all counsel admitted *pro hac vice* are expected to follow the lead of local counsel regarding the accepted practices followed in this Court.

(3) Plaintiffs' Motion to Compel [Doc. 56] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion to Compel is **GRANTED** to the extent that Worthington's General Objection No. 7 to the Requests for Admission is hereby stricken. The parties are further directed to commence immediately with discovery on all claims remaining in this action. In all other respects, Plaintiffs' Motion to Compel is **DENIED**.

(4) Plaintiffs' Motion for Expedited Consideration of Plaintiffs' Motion to Compel [Doc. 58] is **DENIED AS MOOT**.

(5) Defendants' Motion to File Documents Under Seal [Doc. 62] is **GRANTED**.

(6) Plaintiffs' Motion to Strike Defendants' "Reply" or In the Alternative for Leave to File a Final Reply [Doc. 67] is **DENIED**.

Signed: March 6, 2009

Martin Reidinger
United States District Judge